**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


| | | |
|---|---|---|
| Richard Leirer, | ) | CASE NO.  1:06 CV 71 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| Ohio Bureau of Motor Vehicles | ) | <u>Memorandum of Opinion and Order</u> |
| Compliance Unit, et al. | ) | |
| Defendants. | ) | |


### <u>Introduction</u>

This matter is before the Court upon Motion of Defendant Adele Rapelye for Summary Judgment and Judgment on the Pleadings (Doc. 24).  For the following reasons, the motion is GRANTED.

### <u>Facts</u>

Plaintiff, Richard Leirer, filed this Complaint, proceeding *pro se,* against defendants, Ohio Bureau of Motor Vehicles Compliance Unit (hereafter, BMV) and Adele Rapelye, a supervisor within the unit.  The Complaint alleges the following.  Plaintiff filed two previous complaints with this Court involving the same defendants herein that were ultimately

1

dismissed on December 2, 2005.  Prior to dismissal, plaintiff requested documents from the BMV.  Rapelye, in violation of federal privacy laws, retaliated against plaintiff by contacting his private insurance company and extracting information about his policy.  Plaintiff was then informed by Rapelye that his driving and registration privileges were suspended.

The Complaint asserts six claims for relief.  Count One alleges that Rapelye retaliated against plaintiff for filing his previous complaint and violated federal privacy laws by contacting his insurance company, extracting private information and then suspending his license despite the fact that plaintiff had provided proof of insurance to the BMV.  Count Two alleges that defendants violated plaintiff's right to privacy by contacting his insurance company and then using the private information as a basis to suspend plaintiff's license.  Count Three alleges that defendant (neither defendant is specifically identified) continued a pattern of retaliation by denying plaintiff access to his public BMV records.  When plaintiff attempted to view his records or obtain copies at the Parma BMV location, BMV supervisor Ms. Wilson refused such and stated that she was directed to do so by legal counsel because plaintiff had filed a lawsuit against the BMV.  Count Four demands judgment against defendants for the retaliation and constitutional violations.  Count Five seeks declaratory judgment against defendants, seeking an order setting aside the license suspension. Count Six seeks injunctive relief.

After this Court dismissed plaintiff's Complaint on the basis of *res judicata,* the Court of Appeals for the Sixth Circuit affirmed this Court's dismissal of the claims against the BMV and Rapelye in her official capacity.  That court, however, reversed the dismissal of the claims against Rapelye in her individual capacity and remanded the matter.

Rapelye has now moved for summary judgment and judgment on the pleadings.  The following facts are presented.

Rapelye has served as the public inquiries officer and supervisor of the Compliance Unit at the Ohio Bureau of Motor Vehicles (BMV) since 1998.  Her job duties include administering the BMV's Financial Responsibility program as set forth by Ohio statute. During the course of her job duties, Rapelye regularly contacts insurance companies solely to verify sufficient insurance coverage for persons whose driving license has been suspended or is pending suspension for failure to comply with Financial Responsibility (i.e., insurance) requirements.  Contacting insurance companies to verify coverage is a frequent, regular and normal part of her job, as it is for other BMV personnel.  (Rapelye aff.)

On August 27, 2004, pursuant to Ohio's motor vehicle financial responsibility laws, the BMV's Compliance Unit randomly selected plaintiff to provide proof that a 1993 Chevrolet he owned was properly insured on August 25, 2004. After plaintiff failed to timely respond, the BMV notified him by mail that his driving privileges would be suspended unless proof of insurance was received within 60 days.  Plaintiff then sent the BMV information for a different car.  Via letter, the BMV advised plaintiff of the problem with his documentation. When plaintiff did not correct the discrepancy, the BMV issued a second notice of suspension, which took effect on November 30, 2004. The BMV subsequently received additional insurance information from plaintiff, but the information did not show that the 1993 Chevrolet was insured on August 25, 2004. (*Id*.)

On May 19, 2005, in Case No. 1:05CV1404, plaintiff, acting *pro se*, sued the State of Ohio and its Governor, Public Safety Director, and BMV Registrar, claiming his driving

3

privileges were suspended in retaliation for his anti-war activities. This Court dismissed the claims against three defendants, and granted summary judgment to the remaining defendant.

About a month after his suit was filed, the BMV again received insurance documentation from plaintiff for a different car. Despite that the information was for the wrong car, an individual in the BMV's Telecommunications area erroneously canceled plaintiff's  suspension case.  Rapelye subsequently called plaintiff's insurance company solely to verify whether the 1993 Chevrolet was insured on August 25, 2004. The only information Rapelye provided to the insurer was plaintiff's policy number.  A customer service representative told Rapelye that the 1993 Chevrolet was not listed on plaintiff's insurance policy. (Rapelye aff.)

By letter of September 20, 2005, Rapelye notified plaintiff that the BMV had not yet received proof that the 1993 Chevrolet was insured on August 25, 2004, and that the suspension had been erroneously canceled.  He was further notified that if he did not submit proof of insurance for the 1993 Chevrolet by October 7, 2005, his driving privileges would be re-suspended. (*Id.*; Ex. A.)

Plaintiff then went to a BMV office in Parma, Ohio, to view his driving records. He testified that he was denied access to his records by BMV employee Kelli Wilson, who told him that she had been so instructed by legal counsel and her supervisor, but she did not identify who her supervisor was. (Leirer depo. 21-24, 39-40.)  Rapelye avers that she has never been Ms. Wilson's supervisor. (Rapelye aff.)  Plaintiff testified that he also called the BMV and spoke with a person named Doris, who told him that Rapelye called his insurance company and that it was not normal for the BMV to contact insurance companies. (Leirer

4

depo. 17, 28, 42-43)

While his first lawsuit was pending, plaintiff, acting *pro se,* filed a second lawsuit on October 4, 2005, Case No. 1:05 CV 2345, against Ohio's Public Safety Director, the BMV Registrar and Rapelye. He alleged retaliation by contacting his insurance company and denying him access to his driving records. This Court dismissed the action and plaintiff did not appeal. Plaintiff's third lawsuit, the one pending herein, was filed on January 11, 2006.

The BMV has never received from plaintiff any proof of insurance for the 1993 Chevrolet or fees necessary to reinstate his Ohio driving privileges. As such, his driving and registration privileges were re-suspended. (Rapelye aff.)

This matter is now before the Court upon Motion of Defendant Adele Rapelye for Summary Judgment and Judgment on the Pleadings.

### **Standard of Review**

In reviewing a motion for judgment on the pleadings under Rule 12(c), the court "must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. " *United Food & Commercial Workers Local 1099 v. City of Sidney*, 364 F.3d 738, 745 (6th Cir. 2004).

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

5

> [A] party seeking summary judgment always bears the initial
> responsibility of informing the district court of the basis for its
> motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with affidavits," if any, which it believes demonstrates
> the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).  A fact is "material only if its

resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242,

248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the

nonmoving party.  Federal Rule of Civil Procedure 56(e) provides:

> When a motion for summary judgment is made and supported
> as provided in this rule, an adverse party may not rest upon the
> mere allegations or denials of [his] pleadings, but [his
> response], by affidavits or as otherwise provided in this rule,
> must set forth specific facts showing that there is genuine issue
> for trial.  If he does not respond, summary judgment, if
> appropriate, shall be entered against him.

The court must afford all reasonable inferences and construe the evidence in the light most

favorable to the nonmoving party.  *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th

Cir. 1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562

(6th Cir. 1985).  However, the nonmoving party may not simply rely on its pleading, but must

"produce evidence that results in a conflict of material fact to be solved by a jury." *Cox*, 53

F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial

does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d

937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Accordingly, "the mere existence

of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be

6

evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)).  Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.  *Anderson*, 477 U.S. at 249-50 (citation omitted).

**Discussion**

Plaintiff seeks money damages from Rapelye. The Eleventh Amendment does not bar suits for damages against state officials sued in their individual capacities. *George-Khouri Family Ltd. Partnership v.  Ohio Dept. of Liquor Control,* 2005 WL 1285677 (6th Cir. May 26, 2005) (citing  *Hafer v. Melo*, 502 U.S. 21, 30-31 (1991) ).  "Personal liability against a state official can be established under § 1983 by showing "that the official, acting under color of state law, caused the deprivation of a federal right." *Gean v. Hattaway*, 330 F.3d 758 (6th Cir. 2003) (citations omitted).  Qualified immunity, however, protects officials from liability from damages in their individual capacities.  *George-Khouri Family Ltd. Partnership, supra* (citing *Flagner v. Wilkinson*, 241 F.3d 475, 483 (6th Cir.2001); *Littlejohn v. Rose*, 768 F.2d 765, 772 (6th Cir.1985) ).  The Court considers whether an officer in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to have refrained from such conduct. *Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir.1994). State officials are entitled to qualified immunity when their decision was reasonable, even if mistaken. *Pray v. City of Sandusky*, 49 F.3d 1154, 1158 (6th Cir.1995).

To support his retaliation claim, plaintiff must satisfy three elements: (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal

connection between elements one and two- that is, the adverse action was motivated at least in part by the plaintiff's protected conduct. *Dean v. Byerley*, 354 F.3d 540 (6th Cir. 2004).

Rapelye argues that she is entitled to summary judgment because there are no facts showing that she retaliated against plaintiff.  For the following reasons, this Court agrees.

Rapelye correctly asserts that there is no evidence showing she was motivated by plaintiff's lawsuit when she contacted his insurance company.  Rather, the evidence shows that in the normal course of their job duties, BMV personnel regularly contact insurance companies to verify coverage for drivers whose license has been suspended for failure to comply with insurance requirements. (Rapelye aff.)  Rapelye avers that her actions were not retaliatory and, in fact, she called plaintiff's insurer solely to verify coverage for the 1993 Chevrolet. In doing so, she did not provide any information to the insurer other than plaintiff's policy number (*Id.*)

Plaintiff presents an "interrogatory" he apparently submitted to Thomas Chalasinski, an automobile insurance agent for plaintiff's insurer.  The interrogatory asks a series of questions to which Chalasinski was to circle "yes" or "no."  Chalasinski circled "yes" to the following questions:

Was [plaintiff] an insured driver by your company in all of 2005?

Did the policy [plaintiff] have [sic] in 2005 meet the requirements for insurance for the Ohio BMV?

On or about June 22, 2005 did you call the Ohio BMV and tell an agent that [plaintiff] was indeed an insured driver and met the requirements for insurance for the State of Ohio?

Did the insurance [plaintiff] have [sic] on policy number... cover him for liability if he drove another car such as a rental car?

8

On the basis of these answers, plaintiff asserts that despite having information that plaintiff met Ohio's insurance requirements, Rapelye retaliated against plaintiff by contacting his insurer.  Plaintiff contends that Rapelye unlawfully suspended plaintiff's license although he provided proof that he was insured regardless of what car he drove or what vehicle was listed on the policy. This Court disagrees.

Chalasinski's statements do not refute Rapelye's averments that she did not retaliate against plaintiff, did not provide information to plaintiff's insurer other than plaintiff's policy number and that her regular job duties include contacting insurance companies to verify coverage for drivers whose license has been suspended for failure to provide proof of insurance.  Moreover, plaintiff had been asked to provide proof that his 1993 Chevrolet was insured on August 25, 2004.  Chalasinski's statements refer to plaintiff's insurance status in 2005. Finally, Chalasinski does not state whether or not the 1993 Chevrolet was ever insured.

Because plaintiff fails to show that the adverse action was motivated at least in part by plaintiff's protected conduct, his retaliation claim based on Rapelye's action in contacting plaintiff's insurer fails.

Nor is there evidence that Rapelye played any role in denying plaintiff access to BMV records.

Plaintiff states in his brief that Rapelye, a supervisor, ordered Ms. Wilson to deny plaintiff access to his BMV records and denied him copies of that record.  Plaintiff apparently surmises that because Ms. Wilson told him that she had been instructed by her supervisor to withhold the records, and because Rapelye was a supervisor, the Court may infer that Rapelye was the supervisor who so instructed Wilson.  Rapelye avers, however, that she has never

9

been Wilson's supervisor and she never instructed or ordered anyone to withhold or deny plaintiff's access to records.  (Rapelye aff.)  Plaintiff presents no evidence to the contrary.

For these reasons, plaintiff's claims of retaliation against Rapelye fail.

Rapelye moves for judgment on the pleadings as to plaintiff's privacy claims.  The Court agrees that plaintiff can prove no set of facts in support of these claims that would entitle him to relief.

The Complaint alleges that plaintiff's constitutional right to privacy was violated when Rapelye contacted plaintiff's insurer and extracted private information.  The Sixth Circuit, however, has held that "the Constitution does not encompass a general right to nondisclosure of private information," but restricts "the right of privacy to those rights that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty', " such as "in matters relating to marriage, procreation, contraception, family relationships, child rearing and education."        *Wilson v. Collins,* 517 F.3d 421 (6th Cir. 2008) (citations omitted).  The Complaint identifies no such fundamental interest.

Furthermore, during his deposition, plaintiff appears to refer to two federal privacy statutes: the Privacy Act of 1974, 5 U.S.C. § 552a, and the Driver Privacy Protection Act of 1994 (DPPA), 18 U.S.C. § 2721 et seq. (Leirer depo. at  49.)  As defendant points out, however, the Privacy Act only applies to federal agencies.  *Schmitt v. City of Detroit*, 395 F3d 327 (6th Cir. 2005).  The DPPA subjects a person to civil liability for knowingly obtaining, disclosing, or using certain personal information from a motor vehicle record for an impermissible purpose. 18 U.S.C. § 2724. The Complaint does not allege such but alleges that Rapelye contacted and extracted private information from plaintiff's insurer.

10

For these reasons, judgment on the pleadings as to the privacy claim is appropriate.[1]

**<u>Conclusion</u>**

For the foregoing reasons, the Motion of Defendant Adele Rapelye for Summary Judgment and Judgment on the Pleadings is granted.

IT IS SO ORDERED.


 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 7/3/08

---

[1]     Plaintiff's brief refers to an equal protection violation, but plaintiff did not specifically allege such a claim.  Therefore, the Court need not address it.